# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| SAMUEL JEDEDIAH BURLESON, | § | |
| | § | |
| V. | § | A-08-CA-066-LY |
| | § | |
| RICK THALER.[1] Director, Texas Dept. Of | § | |
| Criminal Justice-Correctional | § | |
| Institutions Division, | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To: The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum (Document 2); Respondent's Answer (Document 14) and the affidavit of Petitioner's parents (Document 33). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

### A. Petitioner's Criminal History

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 277th Judicial District Court of Williamson County, Texas, in

---

[1] The previous named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Quarterman. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Thaler is automatically substituted as a party.

cause number 05-265-K277, styled The State of Texas v. Samuel Jedediah Burleson. Petitioner was charged by indictment with two counts of aggravated sexual assault of a child and one count of indecency with a child by exposure. On May 25, 2005, pursuant to a plea agreement, Petitioner judicially confessed to the first count of aggravated sexual assault alleged in the indictment. On July 20, 2005, the court, having found Petitioner's plea substantiated, sentenced Petitioner to ten years deferred adjudication, 180 days jail time, and a fine in the amount of $2,500.00, as recommended in the plea agreement. On May 11, 2006, the State filed a motion to adjudicate Petitioner's guilt. The State alleged Petitioner did not adhere to the conditions of his community supervision. On September 19, 2006, Petitioner pleaded true to the motion to adjudicate pursuant to an agreement that the State would recommend a 20-year sentence. On September 29, 2006, the court found Petitioner's confession to violation of his community supervision substantiated, adjudged him guilty of count one of the indictment, aggravated sexual assault of a child, and sentenced him to 20 years confinement, as recommended by the State.

Petitioner did not appeal his conviction. He did, however, challenge his conviction in a state application for habeas corpus relief. The Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing on December 6, 2007. Ex parte Burleson, Appl. No. 68,649-01 at cover.

**B.     Petitioner's Grounds for Relief**

Petitioner appears to raise the following grounds for relief with regard to his original plea of guilty to the aggravated sexual assault:

1.     His guilty plea and acceptance of deferred adjudication was involuntary;

2.     He is actually innocent;

3. He received ineffective assistance of counsel;

4. He was incompetent to stand trial and the trial court erred in not holding a competency hearing; and

5. He involuntary waived his right to appeal.

Petitioner raises the additional grounds for relief with regard to his plea of true to the motion to adjudicate:

6. The plea of true to the motion to adjudicate, acceptance of the 20-year plea bargain, and waiver of appeal was involuntary because:

    a. He was under the influence of drugs that rendered him incompetent;

    b. The judge did not comply with Federal Rule of Civil Procedure 11;

    c. The trial court did not admonish him regarding the existence of a plea agreement and whether the court would follow any existing plea agreement;

7. He received ineffective assistance of counsel in that counsel:

    a. Advised him to take the plea bargain of twenty years when trial counsel knew he was under the influence of drugs;

    b. Failed to admonish him about the consequences of pleadings true;

    c. Failed to investigate damaging letters written by Petitioner to his fiancee which her father brought to court on the date of Petitioner's sentencing; and

    d. Failed to challenge the voluntariness of his original plea.

**C.    Exhaustion of State Court Remedies**

Respondent points out that Petitioner has not exhausted his state court remedies with regard to claims 3, 4, 5, 6b, 7b, 7c, and 7d. Respondent does not move to dismiss Petitioner's application due to his failure to exhaust his state court remedies. Rather, Respondent argues the unexhausted claims are procedurally barred. Respondent does not contest that Petitioner has exhausted his state

3

court remedies regarding the remaining claims brought in his application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

**D.     Statute of Limitations**

Respondent also argues Petitioner's claims with regard to his original plea of guilty are time-barred.

## DISCUSSION AND ANALYSIS

**A.     Statute of Limitations**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"].[2] The AEDPA amended 28 U.S.C. § 2244 to provide a statute of limitations for applications for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. That section provides, in relevant part:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

On July 20, 2005, after accepting Petitioner's guilty plea to aggravated sexual assault, the court deferred a finding of guilt, placed Petitioner on ten years community supervision, ordered him to serve 180 days in jail and assessed a $2,500.00 fine. Petitioner did not appeal this deferred adjudication order, making it final on August 19, 2005. See TEX. R. APP. P. 26.2(a). Therefore, Petitioner's federal application, challenging his original guilty plea, was due on or before August 19, 2006. Petitioner did not execute his federal application until December 23, 2007, after the limitations period had expired. Petitioner's state application did not operate to toll the limitations period, because it was filed on August 9, 2007, almost a year after the limitations period had expired.

Petitioner argues he is actually innocent of the crime to which he pleaded guilty.[3] The one-year limitations period established by § 2244(d) contains no explicit exemption for petitioners claiming actual innocence of the crimes of which they have been convicted. As a consequence, a petitioner's claim of actual innocence is relevant to the timeliness of his petition if the claim justifies equitable tolling of the limitations period. Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002). The Fifth Circuit has previously held that such claims do not. Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (petitioner's unsupported actual innocence claim does not constitute grounds for equitable tolling "given that many prisoners maintain they are innocent."); Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) (petitioner who fails to show factual innocence has not shown how the

---

[3] Apparently, Petitioner believes that he is innocent because the victim's mother encouraged the relationship.

5

limitations period made the habeas corpus remedy inadequate or ineffective for him, since nothing prevented him from filing a petition before the limitations period expired).

The record does not reflect that any unconstitutional state action impeded Petitioner from filing for federal habeas corpus relief prior to the end of the limitations period. Furthermore, Petitioner has not shown that he did not know the factual predicate of his claims earlier. Finally, the claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. Accordingly, Petitioner's claims, challenging his plea of guilty to aggravated sexual assault are time-barred.

**B.     Unexhausted Claims**

Petitioner has not exhausted claims 3, 4, 5, 6b, 7b, 7c, and 7d. Petitioner's unexhausted claims are procedurally barred. A subsequent state application for habeas corpus on Petitioner's unexhausted issues would be futile as it would be dismissed pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 as an abuse of the writ. When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief. Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally barred. Coleman, 501 U.S. at 735, 111 S. Ct. at 2557. The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a

petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. Id. at n.1. However, a petitioner can still obtain federal habeas review on a claim denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996), citing Coleman, 501 U.S. at 750, 111 S. Ct. 2565, cert. denied, 519 U.S. 1093, 117 S. Ct. 773 (1997).

Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claim would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his unexhausted claims.[4]

**C.   Exhausted Claims**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson,

---

[4] The Court notes claims 3-5 are also time-barred, as previously explained.

230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2).

In his exhausted grounds for relief, Petitioner argues that his plea of true to the motion to adjudicate and accept the 20-year plea bargain and waiver of appeal was involuntary because he was under the influence of drugs that rendered him incompetent and the trial court failed to admonish him regarding the existence of a plea agreement and whether the court would follow any existing plea agreement. Petitioner also argues that he was denied effective assistance of counsel. Specifically, he complains counsel advised him to take the plea bargain of 20 years when trial counsel knew he was under the influence of drugs.

It is well-settled that when a defendant enters of plea of guilty to a criminal offense, the trial record must affirmatively show that the guilty plea was intelligently and voluntarily entered. Boykin

v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969). However, neither the United States Supreme Court nor the Fifth Circuit Court of Appeals has fully delineated the constitutional standards, if any, that apply to a plea of "true" at a probation revocation hearing. Therefore, this Court assumes, at a minimum, the record from a probation revocation hearing must show that a plea of "true" was both voluntary and intelligent. See e.g. Martinez v. Quarterman, No. 3:07-CV-619-M, 2009 WL 855960, at 5 (W.D. Tex. Mar. 30, 2009); Robinson v. Dretke, No. 3:03-CV-2838-B, 2005 WL 1249485, at *4 (N.D. Tex. May 25, 2005), adopted by Order (June 17, 2005) (Boyle, J.); Whitten v. Cockrell, No. 3:01-CV-1487-D, 2003 WL 21509163, at *7-8 (N.D. Tex. Apr. 11, 2003).

A plea is considered "intelligent" if it is clear that the defendant was fully aware of the direct consequences of his plea at the time it was entered, though he need not have understood the "technical legal effect" of the plea. Bousley v. United States, 523 U.S. 614, 619, 118 S. Ct. 1604, 1609 (1998) (citations omitted); Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991) (citations omitted). A plea is voluntary unless it is induced by threats, improper promises, deception, or misrepresentation. Bousley, 523 U.S. at 619, 118 S. Ct. at 1609.

Ineffective assistance of counsel claims, on the other hand, are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

The state court issued detailed findings of fact and conclusions of law with regard to Petitioner's claims. The Court explained:

> 12. On June 9, 2006, the trial court appointed Alexandra Gauthier to represent applicant on the motion to adjudicate guilt.
>
> 13. At the time she represented applicant, Gauthier was a licensed attorney with substantial experience representing criminal defendants. Gauthier had specialized experience representing criminal defendants with mental health issues. Gauthier has contributed to publications and continuing legal education presentations on representing clients with mental illness. As a result of her specialized experience, Gauthier, at the time she represented applicant. was familiar with the signs of mental

illness and mental incompetence. Prior to representing applicant, Gauthier had, on many occasions, requested mental competency examinations for clients whom she believed might be mentally incompetent. In cases in which Gauthier represented clients who were under the influence of a drug to such a degree that the drug interfered with the client's rational understanding of the proceedings, Gauthier prevented her client from participating in court proceedings until the client was no longer under the influence of the drug.

14. Gauthier met with Jane Starnes, the attorney representing the State on the motion to adjudicate guilt. Gauthier learned from Starnes the facts of the criminal offense underlying the deferred adjudication and the allegations contained in the motion to adjudicate. Starnes told Gauthier that applicant had had unsupervised contact with the 14-year old younger sister of his fiancee. Starnes told Gauthier that the father of the 14-year old was upset at applicant and was prepared to testify at a hearing on the motion to adjudicate. Starnes informed Gauthier that the State would proceed to a hearing on the motion to adjudicate unless applicant agreed to plead true to the motion and accept a punishment of 20 years in prison.

15. Gauthier met with applicant on at least five occasions, including three occasions at the Williamson County Jail and two occasions in court. At their initial meeting, Gauthier reviewed with applicant the allegations contained in the State's motion to adjudicate and discussed with applicant those allegations. During the initial meeting, applicant and his fiancee, Ashlee Burleson, who was also present, informed Gauthier that Ashlee's father, who had alerted authorities to applicant's unsupervised contact with his minor daughter, was not likely to appear in court to testify on behalf of the State. Ashlee told Gauthier, in applicant's presence, that she would appear at the hearing and testify on applicant's behalf. Gauthier conveyed to applicant Starnes' 20-year offer. Applicant initially rejected the offer, conveying to Gauthier his confidence that Ashlee and other members of his family would testify on his behalf at the hearing, thereby conveying to the court a convincing portrait of applicant as a person who diligently attempted to satisfy the terms and conditions of his deferred adjudication.

16. Gauthier's initial impression of applicant was that he was intelligent, thoughtful, and lucid. Applicant did not display to Gauthier any sign or symptom of mental illness. Applicant did not appear to Gauthier to be under the influence of any drug or controlled substance. Applicant never told Gauthier that he was taking Seroquel while incarcerated at the Williamson County Jail. Gauthier knew from her experience representing clients taking Seroquel that the chief noticeable side effect of the drug is drowsiness or the appearance of drowsiness. Applicant always appeared fully alert and awake to Gauthier when they met and interacted. Applicant was always lucid and clear-thinking in Gauthier's presence.

11

17. During the course of representing applicant, Gauthier received a letter from applicant's psychologist stating that applicant bad been diagnosed with attention deficit disorder and that applicant had been prescribed Adderall to combat the symptoms of the disorder. Prior to representing applicant, Gauthier had represented other clients with attention deficit disorder. Applicant did not display any sign or symptom consistent with attention deficit disorder in Gauthier's presence. Gauthier asked applicant whether he was taking Adderall while in jail on the motion to adjudicate and applicant denied taking the drug during that period of time.

18. Gauthier spoke with applicant's parents. Applicant's parents described to Gauthier applicant's past mental health history, including his attention deficit disorder, depression, and the various types of medication he had taken. Applicant's parents did not tell Gauthier about any medication that applicant was prescribed or taking during the period of time Gauthier represented him.

19. Gauthier prepared for a hearing on the motion to adjudicate. Gauthier arranged for witnesses to appear and testify on applicant's behalf. Those witnesses included applicant's parents, his roommate, and at least one employee of the Travis County Probation Department. All of those witnesses were present in the courtroom on the date the hearing on the motion to adjudicate was scheduled to take place. Those witnesses would have testified to applicant's struggles with attention deficit disorder and his attempts to satisfy the terms and conditions of his deferred adjudication despite repeated setbacks and hardships.

20. Gauthier attempted to secure the attendance and testimony of Ashlee Burleson, applicant's fiancee, at the hearing. Shortly before the hearing date, Gauthier attempted to contact Ashlee but was unable to reach her. Gauthier learned from applicant's parents that they had made similarly unsuccessful attempts to contact Ashlee. Gauthier informed applicant that Ashlee had become uncooperative or, at the least. unavailable. Applicant's confidence weakened noticeably when Gauthier informed him of Ashlee's unavailability. Applicant still believed at that time, however, that Ashlee's father would not appear at the hearing and testify for the State.

21. When Gauthier appeared in court for the hearing, Starnes informed her that Ashlee's father was present in court and ready to testify. Starnes also informed Gauthier that Ashlee's father had in his possession a batch of letters written by applicant to Ashlee. Starnes allowed Gauthier to review some of the letters. The letters contained admissions by applicant which could be used by the State to applicant's disadvantage during the hearing. Starnes told Gauthier that she planned to introduce the letters as evidence against applicant during the hearing. Starnes also informed Gauthier that she planned to call one of applicant's former probation officers to testify that applicant displayed a constantly negative attitude toward his deferred adjudication and his supervision requirements.

22. Gauthier relayed to applicant all of the new information conveyed to her by Starnes. Applicant became extremely concerned about the potential impact of his letters to Ashlee, the testimony of Ashlee's father, and the testimony of the probation officer. Gauthier discussed with applicant the State's original, 20-year offer in light of the new information. Gauthier reminded applicant that the State's burden of proof for an allegation in a motion to adjudicate was by a preponderance of the evidence, an evidentiary burden much lower than beyond a reasonable doubt. Gauthier expressed her opinion to applicant that the trial court would likely find at least one of the allegations in the motion to adjudicate true. Gauthier expressed her opinion to applicant that, if the court found at least one allegation true, the court would likely sentence applicant to more than 20 years in prison. Gauthier reminded applicant that the trial court could sentence applicant to up to life in prison. Gauthier explained to applicant the benefit of the 20-year offer, namely eliminating the risk of a substantially higher sentence. Applicant was acutely aware of the potential punishment he was facing.

23. Applicant ultimately decided to plead true to the motion to adjudicate and accept the State's 20-year offer. When applicant reached that decision, he was mentally competent and was not under the influence of any disease or defect or any drug or controlled substance.

24. On September 19, 2006, the scheduled date for the hearing on the motion to adjudicate guilt, applicant pleaded true to the allegations contained in me motion. (RR.III-5).

25. At the time he pleaded true to me motion to adjudicate, applicant thoroughly understood that he had a legal right to require the State to prove the allegations contained in the motion by a preponderance of the evidence, that he had a right to call witnesses to testify on his behalf during the hearing, both to refute the allegations in the State's motion and in mitigation of punishment, and that he had a right to confront and cross-examine witnesses for the State.

26. At the time he pleaded true to the motion to adjudicate, applicant was not under the influence of any drug or controlled substance.

27. Gauthier formed the opinion. based on her many meetings and discussions with applicant and applicant's appearance and demeanor on September 19, 2006, that applicant's plea of true to the allegations in the motion to adjudicate guilt was knowing and voluntary.

28. Gauthier did not pressure or coax applicant to plead true. Applicant's decision to plead true was the decision of applicant alone.

29. Applicant pleaded true to the allegations contained in the motion to adjudicate guilt because the allegations were true and because applicant wanted to eliminate the risk of receiving a sentence in excess of 20 years.

30. Prior to applicant's plea of true, Gauthier explained to applicant that he would have to serve at least half of his sentence prior to becoming eligible for release on parole.

31. At the time he pleaded true to the allegations in the motion to adjudicate, applicant understood that the trial court would find the allegations true based on his plea of true, adjudicate him guilty of the offense of aggravated sexual assault, and sentence him to 20 years in prison.

32. Prior to applicant's plea of true, Gauthier explained to applicant that, by pleading true, he would be waiving his right to appeal the trial court's judgment adjudicating guilt.

33. The trial court accepted applicant's plea of true, adjudicated applicant guilty of the offense of aggravated sexual assault, and sentenced applicant, pursuant to the plea agreement, to 20 years in prison. (RR.III-9).

34. After sentencing applicant to 20 years in prison, the trial court asked applicant whether the court had followed the plea agreement as applicant understood it. (RR.III-9). Applicant responded that the trial court had followed the agreement. (RR.III-9).

35. During the hearing on applicant's plea of true, the trial court asked applicant whether he was waiving his right of appeal of the trial court's judgment adjudicating guilt. (RRIII-10). Applicant acknowledged that he was waiving his right of appeal. (RR.III-10).

36. Applicant signed a form titled "Adjudication/Revocation Waivers & Agreement," acknowledging that he understood the consequences of his plea of true, that he was waiving his right of appeal of the judgment adjudicating guilt, and that the trial court was not bound by the plea agreement between applicant and the State on the motion to adjudicate guilt. (RR.III-5).

37. The trial court asked applicant whether he understood the contents of the form titled "Adjudication/Revocation Waivers & Agreement" and applicant replied that he did. (RR.III-5).

38. The trial court asked Gauthier whether she had gone over the form with applicant and whether, in her opinion, he understood its contents. (RR.III-6). Gauthier answered yes to both questions. (RR.III-6).

39. Applicant's claim that he was under the influence of various medications when he pleaded guilty to the offense of aggravated sexual assault on May 25, 2005 is not a credible claim, in light of Brunner's representation to the trial court on that date that applicant was mentally competent to stand trial, the trial court's finding that applicant was mentally competent to stand trial, and applicant's statement to Starnes, under oath, that his plea of guilty was free and voluntary.

40. Applicant's claim that he was under the influence of Seroquel when he pleaded true to the allegations contained in the motion to adjudicate guilt on September 19, 2006 is not a credible claim, in light of the affidavit of Alexandra Gauthier, stating that applicant's thought processes on that date were lucid and clear and that applicant did not display any sign or symptom on that date or before that date of a person under the influence of a drug, applicant's statements to the trial court that he had gone over the form titled "Adjudication/Revocation Waivers & Agreement" and that he understood the contents of the form, and applicant's signature on the form acknowledging that he understood the consequences of his plea of true.

41. Applicant's claim that he is actually innocent of the offense of aggravated sexual assault, as alleged in count one of the indictment, is not a credible claim, in light of applicant's oral and written judicial confessions to the offense and applicant's statements to the pre-sentence investigator acknowledging that he and the complainant had sexual intercourse on multiple occasions.

## Conclusions of Law

1. Applicant is not actually innocent of the offense of aggravated sexual assault as alleged in count one.

2. Applicant's plea of guilty to the offense of aggravated sexual assault on May 25, 2005 was voluntary.

3. Applicant's plea of true to the allegations contained in the motion to adjudicate guilt on September 19, 2006 was voluntary.

4. Applicant's waiver of his right of appeal of the trial court's judgment adjudicating guilt was voluntary.

5. Applicant claims he was denied his Fifth Amendment right to due process of law when the trial court failed to properly admonish him concerning his plea of true to the motion to adjudicate. Applicant fails to cite any legal authority for any required admonishment by a trial court concerning a plea of true to a motion to adjudicate guilt.

6. Applicant claims that the trial court failed to admonish him that the trial court was not bound by the plea agreement. But applicant signed the form titled "Adjudication/Revocation Waivers & Agreement," thereby acknowledging that that [sic] trial court was not bound by the plea agreement. Moreover, the trial court followed the plea agreement and sentenced applicant to 20 years in prison.

7. Applicant claims that the trial court did not inquire in open court concerning the existence of a plea agreement on the motion to adjudicate guilt or announce in open court whether the court would follow or reject the plea agreement. But the trial court did acknowledge the existence of a plea agreement on the record during the hearing on applicant's plea of true, and applicant acknowledged that the trial court had followed the terms of the agreement by sentencing him to 20 years in prison.

8. When presenting a federal constitutional claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, meaning a failure to function as "counsel" as required by the Sixth Amendment, and (2) prejudice to the defendant resulting from the deficiency, meaning that, but for counsel's alleged unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. U.S. CONST. amend. VI; Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 764 (1984). A defendant has the burden of presenting a record affirmatively showing ineffective assistance of counsel. Jackson v. State, 871 S.W.2d 768 (Tex. Crim. App. 1994).

9. Gauthier was not deficient in representing applicant on the motion to adjudicate guilt.

10. Gauthier was not deficient in allowing applicant to enter an involuntary plea of true to the motion to adjudicate guilt. Applicant pled true freely and voluntarily after Gauthier explained to applicant his various legal rights with regard to the motion to adjudicate, the potential punishment applicant faced on the motion to adjudicate, the strength of the State's evidence supporting the allegations in the motion to adjudicate, and the likely outcome of a hearing on the motion. Applicant understood Gauthier's explanations and admonitions concerning the motion to adjudicate and his legal options related thereto. Applicant was not under the influence of any drug when he pled true to the motion to adjudicate.

11. Gauthier was not deficient in failing to adequately advise applicant concerning the consequences of his plea of true to the motion to adjudicate. Gauthier explained to applicant that, if he accepted the State's plea offer and pled true to one or more of the allegations contained in the motion, the trial court would find the allegation(s) true and sentence him to 20 years in prison. Gauthier explained to applicant that he would not be eligible for release from prison until he had served at least half of his sentence. Applicant understood Gauthier's explanations of the consequences of his plea of true.

12. Gauthier was not deficient in failing to investigate applicant's mental and medical history in an attempt to develop evidence in mitigation of applicant's punishment. Gauthier interviewed applicant, applicant's fiancee, Ashlee Burleson, and applicant's parents. Gauthier secured the attendance in court, on the hearing date, of applicant's parents, applicant's roommate, and a probation officer to testify on applicant's behalf at the hearing. Gauthier reviewed a letter from applicant's psychologist revealing applicant's diagnosis of attention deficit disorder and prescription of the drug Adderall to combat the symptoms of the disorder. Gauthier asked applicant whether he was taking Adderall while incarcerated on the motion to adjudicate guilt and applicant denied taking the medication while incarcerated. Applicant did not display any sign, symptom, or characteristic of a mental disease, defect, or illness in Gauthier's presence.

13. Gauthier was not deficient in failing to ascertain that applicant was under the influence of a drug at the time he pled true to the motion to adjudicate guilt. Applicant did not display any sign, symptom, or characteristic of a person who was under the influence of a drug or controlled substance in Gauthier's presence. Applicant appeared rational and lucid on the occasions on which he and Gauthier interacted. Applicant did not tell Gauthier that he was taking any drug or medication while he was incarcerated on the motion to adjudicate guilt.

14. Assuming for the sake of argument that Gauthier was deficient in one or more aspects of her representation of applicant on the motion to adjudicate guilt, applicant has failed to demonstrate prejudice under the second prong of Strickland.

See Ex parte Burleson, Appl. No. 68,649-01 at 35-43.

As is plain from these detailed findings and conclusions, the state court thoroughly addressed Petitioner's claims. Petitioner has failed to rebut the state court findings with clear and convincing evidence. In addition, the state court reasonably found, and the record reflects, that Petitioner's plea of true was voluntarily entered and that Petitioner was competent to enter the plea. The state court also reasonably determined that Petitioner's attorney was not deficient and Petitioner has shown no prejudice. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's

determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims

## RECOMMENDATION

It is recommended that Petitioner's claims 1-5 be dismissed as time-barred, Petitioner's claims 3, 4, 5, 6b, 7b, 7c, and 7d be dismissed as procedurally barred, and claims 6a, 6c and 7a be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of October, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE